UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CHRISTIAN LORENZO WITT,<br><br>Defendant. | 5:23-CR-50079-KES<br><br>REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS EVIDENCE (DOC. 35) |

Christian Lorenzo Witt filed a motion to suppress evidence (Doc. 35) and memorandum in support of his motion (Doc. 36). The United States filed a response in opposition to the motion. (Doc. 41). A hearing was held on Wednesday, February 28, 2024, at 10 a.m. Witt was personally present and represented by his attorney of record, Aidan Goetzinger. The United States was represented by the Assistant United States Attorney, Sarah Collins. Based on a careful consideration of the evidence and counsel's arguments, the court respectfully recommends that Witt's motion to suppress (Doc. 35) be denied.

## **JURISDICTION**

Witt is charged in an Indictment with Possession of a Firearm by a Prohibited Person in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). (Doc. 1). The pending motion was referred to the Magistrate Judge pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) and United States District Court District of South Dakota's local rules, LR 57.11(B).

1

## FACTUAL BACKGROUND

On March 18, 2023, Rapid City Police Department (RCPD) Officer Brandon Johnson was on duty. Officer Johnson was patrolling in the north area of Rapid City, specifically the area of the Surfwood Apartments. Officer Johnson testified that he was especially familiar with that area of town because he has previously been involved with numerous investigations in that area including drug activity, gang activity, gun crimes, murder investigations, and shooting investigations. He testified that this area of town probably has the highest crime rate and law enforcement makes a concerted effort to have and officer presence in that area. The court finds Officer Johnson to be a credible witness.

At approximately 7:45 p.m., as Officer Johnson drove from North Maple Street onto Surfwood Drive, he observed a red Chevy Impala near 120 Surfwood Drive with its headlights on. See Exhibits 1A,[1] 2,[2] & 103.[3] Officer Johnson then traveled east on Surfwood Drive. Due to the time of the year, it was dark outside; however, the Surfwood Apartments had streetlights that illuminated the parking lot and the surrounding street.

Officer Johnson testified that as part of law enforcement's efforts to have a police presence in the high crime area, they make a concerted effort to conduct traffic stops; thus, he was on the lookout for a reason to pull over the Impala. The driver of the Impala, later identified to be Witt, drove out of the Surfwood Apartments' east exit and traveled west on Surfwood Drive. Officer

---

[1] Exhibit 1A is an ariel photograph of the area surrounding the Surfwood Apartments.
[2] Exhibit 2 is Officer Johnson's dash camera footage.
[3] Exhibit 103 is Officer Johnson's police report.

Johnson pulled into the west entrance of the apartment, conducted a U-turn, and was faced towards Surfwood Drive. After Officer Johnson conducted the U-turn, Witt pulled back into the apartment complex, this time using the west entrance. As Witt drove past Officer Johnson's vehicle, Officer Johnson noticed a large spiderweb crack on the passenger's side of the Impala. See Exhibits 4[4] & 104[5]. Officer Johnson testified that from his point of view, he noticed that "[i]t was a pretty big crack that . . . look[ed] like it obstructed the view of the driver." He believed he could see the light refraction modifying the field of view from the windshield.

     Officer Johnson activated his emergency lights while conducting another U-turn while Witt parked in front of 20 Surfwood Drive. Officer Johnson position himself behind Witt's vehicle. Officer Johnson testified that not every crack in a windshield will cause him to initiate a traffic stop; the size of the crack and its location determines whether he will conduct the stop. Officer Johnson also testified that he thought it was suspicious that the Impala went onto Surfwood Drive via the east exit, drove on the street, and then entered the west entrance when he could have driven from one side of the parking lot to another within the lot instead. Officer Johnson stated it was suspicious because, in that area, "people will either exit one parking lot and pull back in the other parking lot if they see a law enforcement car or . . . people will go from apartment building to apartment building either buying drugs or selling drugs."

     When Officer Johnson walked towards the Impala, he noticed Witt was "moving around a lot in the vehicle and it appeared he was trying to conceal

---

[4] Exhibit 4 is RCPD Officer Mathies' body worn camera.
[5] Exhibit 104 is daytime photos of the windshield.

something[.]" This behavior concerned Officer Johnson because it is indicative of the person either trying to retrieve a weapon, conceal a weapon, or conceal illegal contraband. Officer Johnson testified "the furtive movements [he] observed [were not] consistent with a typical traffic stop." Officer Johnson observed Witt appear to reach down and increase the volume of the radio.

Officer Johnson informed Witt the reason he was stopped is because the vehicle has "a cracked front windshield." Exhibit 3[6]. Officer Johnson told Witt to take his hands out of his pocket and place them on the steering wheel. Witt did not comply but started scrolling on his phone and lit a cigarette instead. Witt volunteered to Officer Johnson that he had outstanding warrants for his arrest. Officer Johnson confirmed Witt's warrants with dispatch and Witt was placed under arrest. A subsequent search produced evidence which Witt seeks to suppress.

## DISCUSSION

In a criminal case, a defendant may move to suppress the use of evidence at trial that he believes was obtained in violation of the Fourth Amendment, including any "fruit" derived from that evidence. Wong Sun v. United States, 371 U.S. 471, 484–86 (1963). Such evidence is suppressed only when the court finds: (1) "the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct," and (2) "the exclusionary sanction is appropriately imposed in a particular case." United States v. Leon, 468 U.S. 897, 906–07 (1984).

---

[6] Exhibit 3 is RCPD Officer Johnson's Body Worn Camera.

4

Witt argues the traffic stop was not supported by reasonable suspicion or probable cause for three reasons:

> First, SDCL § 32-15-2.3 did not authorize Officer Johnson to initiate the stop.  Second, even if SDCL § 32-15-2.3 authorized Officer Johnson to initiate a traffic stop, he did not actually observe the vehicle's cracked windshield until after he initiated the stop.  Third, even if South Dakota law authorized Officer Johnson to initiate the stop and Officer Johnson observed the vehicle's cracked windshield, Officer Johnson made an unreasonable mistake of fact that the cracked windshield "significantly impaired" Christian's vision.  Because the stop was not supported by reasonable suspicion or probable cause, it violated Christian's rights under the Fourth Amendment.  Thus, the Court should suppress all evidence seized as a result of the unconstitutional stop under the exclusionary rule as fruit of the poisonous tree.

(Doc. 36, pp. 5, 10).  The court will address each argument below.

### I.   South Dakota Codified Law § 32-15-2.3

First, Witt asserts that "the South Dakota statute Officer Johnson ostensibly relied upon for making the stop does not provide a basis for a traffic stop." (Doc. 36, p. 5).  Witt asserts that in order to justify a traffic stop, a statute setting forth the law must impose a criminal penalty or the statute must expressly state that a violation of the law justifies a traffic stop.  Id. at 6.

South Dakota Codified Law (SDCL) § 32-15-2.3 prohibits cracks, breaks, shatters, or distortions in a vehicle's glass that "significantly impairs the vision of the motor vehicle operator."  SDCL § 32-15-2.3.  A court in this district determined that SDCL § 32-15-2.3 provides a basis for a stop as long there was "(1) a crack, break, shatter, or distortion in the glass of a vehicle that (2) 'significantly impairs' the driver's vision."  United States v. Hernandez, 1:22-10016-CBK, 2022 WL 15303651 (D.S.D. Oct. 22, 2022).  That court stated

"[n]ot just any crack [] will provide probable cause for a violation[,] [t]he crack must be a significant visual impairment for the driver." Id. As long as the two factors set out in Hernadez are met, SDCL § 32-15-2.3 provides a basis for a stop. Therefore, the court rejects Witt's first argument.

## II.     Officer Johnson's Observations

Witt next argues that "even if South Dakota law provides a basis for the stop, Officer Johnson did not actually observe the cracked windshield prior to initiating the stop." (Doc. 36, p. 5). Witt asserts "[t]here is only a six second window within which Officer Johnson allegedly sees the vehicle's cracked windshield and Officer Johnson initiates the stop." Id. at p. 8. Witt further asserts that "[t]he cracked windshield is never visible on the dash cam prior to Officer Johnson initiating the stop" and his "body cam gives no indication that Officer Johnson maneuvered his body to directly observe the cracked windshield upon Christian's re-entry into the parking lot." Id.

Officer Johnson's testified that he was able to personally observe more than what his dash camera footage displayed because he was able to turn his neck and see significantly more than what his dashcam or bodycam footage recorded. He testified, "As [Witt] pulled into the parking lot and passed by me, I was able to see that front windshield had like a spiderweb crack. . . It was a pretty big crack that from my point of view looked like it obstructed the view of the driver."

The court finds that Officer Johnson's testimony that as Witt pulled into the parking lot and passed by Officer Johnson's vehicle, he was able to observe

6

Witt's cracked windshield. The court's observation of the windshield crack is consistent with Officer Johnson's observations; to-wit, a spider-web like crack that would be immediately identifiable as obstructing the view of the driver, particularly while attempting to look toward an object located towards the right front fender of the vehicle. Exhibit 104.

On cross examination, Officer Johnson was asked how quickly he can make the determination on the severity of the crack's obstruction; he responded that he can make that determination pretty quickly because he spent a significant amount of time on night shifts when he patrolled street crimes, primarily for traffic violations. Officer Johnson testified he has previously made multiple stops based on driver's violating the law for having on obstructed view from a crack in the windshield. The court finds that Officer Johnson's prior experience and the severity of the crack allowed him to quickly and efficiently examine the Impala's windshield.

Because the court finds Officer Johnson's testimony that he saw the large spiderweb crack on the passenger's side of the Impala prior to conducting the traffic stop to be credible, Witt's second argument is denied.

### III.    Reasonable Suspicion Existed to Stop the Vehicle

Witt asserts that "[e]ven if SDCL § 32-15-2.3 authorized Officer Johnson to initiate the stop, and even if Officer Johnson actually observed the vehicle's cracked windshield prior to initiating the stop, Officer Johnson lacked reasonable suspicion to initiate the stop because the cracked windshield did not, as a matter of fact, significantly impair Christian's vision." (Doc. 36, p. 9).

The Fourth Amendment of the U.S. Constitution provides the right of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "For purposes of constitutional analysis, a traffic stop is characterized as an investigative detention, rather than a custodial arrest. . . . As such, a traffic stop is governed by the principles of Terry [.]" United States v. Jones, 269 F.3d 919, 924 (8th Cir. 2001) (citing Berkemer v. McCarty, 468 U.S. 420, 439 (1984); Terry v. Ohio, 392 U.S. 1 (1968)). The constitutional analysis under Terry is two-part: (1) "whether the officer's action was justified at its inception," and (2) "whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20. Witt does not argue that the scope of the traffic stop was unreasonable; thus, the only issue was whether the stop was justified at its inception.

To be valid pursuant to the Fourth Amendment, a traffic stop, at its inception, "must be supported by reasonable suspicion or probable cause." United States v. Houston, 548 F.3d 1151, 1153 (8th Cir. 2008) (citations omitted). In considering whether reasonable suspicion exists, the court must consider "the totality of [the] circumstances," and the "whole picture must be taken into account." United States v. Thomas, 992 F.2d 201, 203 (8th Cir. 1993).

A law enforcement officer has reasonable suspicion when the officer is aware of particularized, objective facts which, taken together with rational inferences from those facts, reasonably warrant suspicion that a crime is being

8

committed. United States v. Hollins, 685 F.3d 703, 706 (8th Cir. 2012). Whether reasonable suspicion or probable cause existed is determined "by looking to what the officer reasonably knew at the time" of the stop, and not based on hindsight. Id.

The Eighth Circuit Court of Appeals has been clear: when an officer observes even a minor traffic violation, there is probable cause to stop the vehicle, even if the traffic stop is a pretext for another investigation. United States v. Sallis, 507 F.3d 646, 649 (8th Cir. 2007) (internal quotations omitted). The fact that Officer Johnson was looking for a reason to stop the Impala is irrelevant.

As previously discussed, the court finds Officer Johnson's testimony that he saw the large spiderweb crack on the passenger's side of the Impala which significantly impaired Witt's vision to be credible. Because Officer Johnson observed a traffic violation, there was probable cause to stop the Impala.

Witt argues "[t]he crack only minimally encroaches upon the driver's side of the vehicle" and "does not impair the driver's vision." (Doc. 36, p. 9). The court disagrees. The crack in the windshield significantly impaired the vision of the motor vehicle operator. See Exhibits 3-11 & 104. Therefore, SDCL § 32-15-2.3 was violated and Officer Johnson had probable cause to initiate a traffic stop upon the Impala. Witt's argument asserting the contrary is denied.

## **CONCLUSION**

For the foregoing reasons, it is respectfully recommended that the motion to suppress (Doc. 35) be denied.

**NOTICE TO PARTIES**

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require *de novo* review by the District Court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 8th day of March, 2024.

BY THE COURT:

_____
DANETA WOLLMANN
United States Magistrate Judge