UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CHRISTIAN LORENZO WITT,<br><br>Defendant. | 5:23-50079-KES<br><br>ORDER ADOPTING REPORT & RECOMMENDATION DENYING MOTION TO SUPPRESS |

Defendant, Christian Witt, is charged with one count of possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). Docket 1. Witt moves to suppress evidence seized during the traffic stop of his vehicle. Docket 35 at 1. He contends that the seizure of his vehicle was conducted without reasonable suspicion or probable cause. *Id.* Thus, Witt asserts that his Fourth Amendment rights were violated and that all evidence yielded from the subsequent search of his vehicle must be suppressed as fruit of the poisonous tree. *Id.*

The court referred Witt's motion to Magistrate Judge Daneta Wollmann under 28 U.S.C. § 636(b)(1)(B). After holding an evidentiary hearing, Magistrate Judge Wollmann recommended denying Witt's motion to suppress. Dockets 43, 49. Witt objects to the Report and Recommendation. Docket 53. After a de novo review of the Report and Recommendation and the record, the court adopts the Report and Recommendation in full and denies Witt's motion to suppress.

## LEGAL STANDARD

This court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 59 of the Federal Rules of Criminal Procedure. The court reviews de novo any objections to the magistrate judge's recommendations with respect to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). Because motions to suppress evidence are considered dispositive matters, a magistrate judge's recommendation regarding such a motion is subject to de novo review. 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 673 (1980). In conducting a de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United States v. Craft*, 30 F.3d 1044, 1045 (8th Cir. 1994).

## FACTUAL BACKGROUND

After a de novo review, the court makes the following pertinent factual findings necessary to resolve this dispute:

At approximately 7:44 pm on March 18, 2023, Rapid City Police Department Detective Brandon Johnson was patrolling near the Surfwood Apartments in Rapid City, South Dakota. *See* Docket 46 at 2–3; Docket 51 at 12; Ex. 2 at 01:43:47. Detective Johnson noticed Witt's vehicle, a red 2005 Chevy Impala, back out of a parking spot in the parking lot of 120 Surfwood Drive and proceed onto Surfwood Drive headed westbound. Docket 46 at 3; *see* Docket 51 at 17–18. Detective Johnson pulled into the parking lot of 120

Surfwood Drive and conducted a U-Turn to face the street. *See* Docket 46 at 3; Docket 51 at 23; Ex. 2 at 01:43:54. At this point, Detective Johnson observed Witt turn back into the parking lot. *See* Docket 46 at 3; Docket 51 at 24.

Detective Johnson testified that as Witt pulled back into the parking lot and passed his patrol vehicle, he observed a "pretty big" spiderweb crack that "looked like it obstructed the view of the driver." Docket 51 at 25; *see also* Docket 46 at 3. During the evidentiary hearing, Detective Johnson testified as to his understanding of when a windshield crack violates South Dakota law. *See* Docket 51 at 25–27, 64. Detective Johnson testified that he believed that the windshield crack "obstructed the view of the driver" and "impede[d] his vision." *Id.* at 25, 64. Detective Johnson turned around again to pull Witt over and activated his patrol lights. *Id.* at 29; Docket 46 at 3; *see* Ex. 2 at 01:44:15.

Detective Johnson got out of his car and walked up to the Impala. Docket 51 at 34–35. He told Witt that he was being pulled over due to his cracked windshield. *See* Ex. 3 at 19:44:27. During the brief conversation that followed, Witt stated that he had outstanding warrants for his arrest. *Id.* at 19:44:48. Detective Johnson called dispatch and confirmed the existence of the warrants. *See* Docket 46 at 3; Ex. 3 at 19:47:00. Witt was arrested and his car was searched during a vehicle inventory. *See* Docket 46 at 3; Ex. 3 at 19:47:32. That search revealed a firearm, which is the evidence that Witt moves to suppress. *See* Docket 46 at 3; Ex. 4 at 19:56:10.

## DISCUSSION

The Fourth Amendment of the United States Constitution forbids "unreasonable searches and seizures." U.S. Const. amend. IV. "With some exceptions, both the primary evidence obtained as a direct result of an illegal search or seizure and . . . evidence later discovered and found to be derivative of an illegality, the so-called 'fruit of the poisonous tree,' is inadmissible under the exclusionary rule." *United States v. Lillich*, 6 F.4th 869, 875 (8th Cir. 2021) (internal quotation marks omitted) (omission in original) (quoting *Utah v. Strieff*, 579 U.S. 232, 237 (2016)).

"A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." *Heien v. North Carolina*, 574 U.S. 54, 60 (2014) (citing *Brendlin v. California*, 551 U.S. 249, 255–59 (2007)). A law enforcement officer may conduct an investigatory stop when the officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *See Navarette v. California*, 572 U.S. 393, 396 (2014) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). Courts "must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

"A traffic violation, no matter how minor, gives probable cause for a traffic stop." *Wood v. Wooten*, 986 F.3d 1079, 1081 (8th Cir. 2021). The existence of probable cause to stop a vehicle stemming from a traffic violation

4

does not "depend[] on the actual motivations of the individual officers involved," so long as some traffic law was violated. *Whren v. United States*, 517 U.S. 806, 813 (1996).

Witt raises a single legal objection to Magistrate Judge Wollmann's report and recommendation. *See* Docket 53 at 3. He challenges the finding that reasonable suspicion or probable cause existed to stop Witt's vehicle and argues that Detective Johnson "made a mistake of law as to the correct legal standard for a traffic stop under SDCL § 32-15-2.3[,]" the South Dakota statute prohibiting certain windshield defects. *Id.* at 4.

"[I]f an officer makes a traffic stop based on a mistake of law, the legal determination of whether probable cause or reasonable suspicion existed for the stop is judged by whether the mistake of law was an 'objectively reasonable one.'" *United States v. Washington*, 455 F.3d 824, 827 (8th Cir. 2006) (quoting *United States v. Smart*, 393 F.3d 767, 770 (8th Cir. 2005)). Thus, in order to address Witt's objection, the court must determine first, whether Detective Johnson made a mistake of law; and if so, whether the mistake was objectively reasonable. *See Washington*, 455 F.3d at 827.

I.   **Whether Detective Johnson made a mistake of law**

South Dakota law requires that on a motor vehicle windshield, "[n]o glass or glazing material may be cracked, broken, shattered, or distorted to the extent that it significantly impairs the vision of the motor vehicle operator." SDCL § 32-15-2.3. Witt argues that Detective Johnson initiated the traffic stop based on the erroneous belief that the law prohibits deformities that impair the

driver's view, without it being a significant impairment, and that this error constitutes a mistake of law requiring reversal of Magistrate Judge Wollmann's report and recommendation and suppression of the firearm. *See* Docket 53 at 6–7.

During the evidentiary hearing, Detective Johnson testified in the following exchange about his understanding of the legal standard required to stop a vehicle for a cracked windshield, and his observations of Witt's windshield:

> **Q**: So when did you first notice Mr. Witt had something wrong with his vehicle?
> **A**: As he pulled into the parking lot and passed by me, I was able to see that front windshield had like a spiderweb crack.
> **Q**: And again your head is on a swivel so you're seeing things that the camera may not see?
> **A**: Yes.
> **Q**: As you - - as you notice that, what was concerning about that windshield?
> **A**: It was a pretty big crack that, from my point of view, looked like it obstructed the view of the driver.
> **Q**: And just in your – in your practice and what is the practice of the Rapid City Police Department, does every single windshield crack cause you to pull a car over?
> **A**: No, it just depends on the size of the crack.
> **Q**: Okay. Size of the crack, anything about location?
> **A**: Just if it's somewhere that will impair the driver's view.
> **Q**: And that includes directly in front of the driver?
> **A**: Yes.
> **Q**: And how about off to the side, does - - can a driver's vision be impaired by damage to the passenger's side?
> **A**: Yes, I believe so.

Docket 51 at 25–26. Detective Johnson testified further about the size of the crack several questions later:

> **Q**: And in your view with what you saw, could that damage to the passenger window have actually - - or passenger side front window

6

>have obstructed the view potentially of a pedestrian coming from that area?
>**A**: Potentially, due to the size of the crack.

*Id.* at 26. On cross examination, when asked whether he observed Witt's windshield and determined the crack "significantly impaired" the driver's vision, Detective Johnson replied that "it looked like it was enough to impede his vision." *Id.* at 64. In his police report, Detective Johnson wrote that the crack "spider webbed in multiple directions and obstructed the view of the driver." Docket 46 at 3.

One court in the District of South Dakota previously considered whether an officer made a mistake of law in relation to SDCL § 32-15-2.3. It found that the windshield statute does require that the defect "significantly impair" the view of the driver, and that an officer made a mistake of law where he believed that SDCL § 32-15-2.3 prohibited driving with a "singular, lengthy crack" that "was not tree-like or spiderwebbed." *United States v. Hernandez*, No. 1:22-CR-10016-CBK, 2022 WL 15303651 at *2, *5–6 (D.S.D. Oct. 22, 2022), *report and recommendation adopted*, No. 1:22-CR-10016-CBK, 2022 WL 16508981 (D.S.D. Oct. 27, 2022). In that case, the arresting officer did not testify on direct examination or write in his report that the crack was anything more than a simple impairment, which contributed to the court's finding that a mistake of law was made. *See id.* at *6.

*Hernandez* is distinguishable from Witt's circumstances because in *Hernandez*, the officer's testimony did not otherwise show that he was assessing the windshield for deformities that in practice violate SDCL § 32-15-

7

2.3. *See Hernandez,* 2022 WL 15303651, at *6. Despite Detective Johnson's omission of the term "significant," his testimony shows that he understood the kind of obstruction SDCL § 32-15-2.3 prohibits. He described the crack as large and said that it "spiderwebbed" across the windshield. *See* Docket 46 at 3; Docket 51 at 25-26. This description is consistent with video and photographs of the windshield that show the extent and severity of the crack. *See* Docket 46 at 7; Ex. 3 at 19:52:30. When asked why he believed that the crack violated the statute, Detective Johnson said that "it was a pretty big crack" that "looked like it obstructed the view of the driver." Docket 51 at 25. Thus, by providing context as to why he found the crack concerning, Detective Johnson in effect described a significant impairment even though he does not directly quote the statute. This is unlike the circumstances of *Hernandez,* in which the crack at issue was a single line, and thus unlikely to "significantly" obstruct the drivers view. *See Hernandez,* 2022 WL 15303651, at *6. If the officer in *Hernandez* had considered the features described by Detective Johnson, he would likely have found that the single-line crack did not violate the statute. In other words, the *Hernandez* officer's failure to explicitly state that the single-line crack was more than a simple impairment reflected the fact that it was only a simple impairment, and not a significant one. This was not the case with Detective Johnson's testimony, which, despite failing to cite the statute expressly, did not reveal a mistaken interpretation of the statute.

      The facts at hand are also unlike the varied circumstances in which courts have found an officer made a mistake of law. *See, e.g., Heien v. North*

8

*Carolia*, 574 U.S. 54, 57 (2014) (officer mistakenly believed that statute requiring functioning brake lights mandated that both brake lights be operational, where a single working light was sufficient); *United States v. Forjan*, 66 F.4th 739, 746–47 (8th Cir. 2023) (officer mistakenly believed that defendant's license plate sticker revealed an expired registration); *Washington*, 455 F.3d at 826–27 (officer mistakenly believed that a cracked windshield violated a Nebraska windshield obstruction statute where the statute only barred obstructing objects). These cases differ from the circumstances before the court because the conduct of those drivers did not violate the statutes at issue. For example, in *Heien*, the single functioning brake light did not violate the underlying statute, which only required one working light. *See Heien*, 574 U.S. at 57. And in *Washington*, the driver's cracked windshield did not violate any applicable traffic law. *See Washington*, 455 F.3d at 826–27. But here, the condition of the Impala's windshield did violate SDCL § 32-15-2.3. The spiraling crack extended to most of the windshield surface and was "a significant visual impairment for the driver[,]" thus falling under the subset of defects contemplated by the statute. *Hernandez*, 2022 WL 15303651, at *5; *see* Ex. 104.

      Despite his failure to state that the driver's vision was significantly impaired during the suppression hearing and in his reports, Detective Johnson nonetheless correctly applied SDCL § 32-15-2.3. Detective Johnson's testimony showed that he was aware of the level of obstruction required to violate the statute. His testimony is corroborated by photos and videos showing the crack

9

far exceeds the deformation at issue in *Hernandez*. Thus, the court does not find that Detective Johnson made a mistake of law in stopping Witt's vehicle.

## II.     Whether any mistake of law by police was objectively reasonable

Where the court finds an officer made a mistake of law, the court must go on to assess the objective reasonability of the officer's belief. *See Washington*, 455 F.3d at 827. But Detective Johnson did not make a mistake of law, the court does not continue to the second step in the analysis. Thus, Witt's objection to Magistrate Judge Wollmann's Report and Recommendation is overruled.

## CONCLUSION

Because there is no constitutional violation, the court does not suppress the evidence gathered as a result of the traffic stop and subsequent search of Witt's vehicle. The court adopts Magistrate Judge Wollmann's recommendation in full and denies Witt's motion to suppress. Thus, it is

ORDERED that the Report and Recommendation (Docket 49) denying Witt's motion to suppress is adopted. The motion to suppress (Docket 35) is denied.

Dated April 25, 2024.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE